# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DEANNA FALZONE, CLAUDETTE
LOZANO, DAVID PRICE,

      Plaintiffs,                       Case No.

v.

                                           Hon.

SCRIPPS MEDIA, INC.

      Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Complaint.

## COMPLAINT AND JURY DEMAND

    Plaintiffs Deanna Falzone, Claudette Lozano, and David Price ("Plaintiffs"), by and through their attorneys, HURWITZ LAW PLLC, state the following for their Complaint against Scripps Media, Inc. ("Defendant"):

## INTRODUCTION

    1.    Plaintiff Falzone and Plaintiff Price were employed as Anchor/Reporter and Senior Sales Account Executive, respectively, when they submitted religious accommodation requests to be exempt from Defendant's mandatory COVID-19 vaccination policy.  Despite the Equal

Employment Opportunity Commission ("EEOC") telling employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance," Defendant did the opposite.  Defendant ignored the EEOC's warning that employers "should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenets of the employee's religion, or because the employee adheres to some common practices but not others" and terminated Plaintiffs Falzone and Price for seeking religious accommodation based on Defendant's subjective standard of religiosity.  Defendant then terminated Plaintiff Lozano for opposing Defendant's unlawful religious discrimination, even though Plaintiff Lozano herself was vaccinated.

## **PARTIES AND JURISDICTION**

2.      Plaintiff Falzone is an individual residing in Hudsonville, Ottawa County, in the State of Michigan.

3.      Plaintiff Lozano is an individual residing in Wayland, Allegan County, in the State of Michigan.

4.      Plaintiff Price is an individual residing in Grand Rapids, Kent County, in the State of Michigan.

5.      Defendant Scripps Media Inc. is a for-profit company headquartered in Cincinnati, Ohio.

6.      This Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Defendant is now, and at all times mentioned was, a corporation duly organized and existing under the laws of Ohio and Plaintiffs are now, and at all times mentioned were, citizens and domiciled in the State of Michigan.

7.      Venue is proper in the Western District of Michigan pursuant to 28 U.S.C §
1391(e), as it is the district where the events precipitating litigation arose. 28 U.S.C § 1391(e).

8.      Plaintiffs filed charges of religious and disability discrimination with the Equal
Employment Opportunity Commission and will amend the complaint to allege federal
discrimination claims once they receive their respective right to sue letters.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory Vaccine Policy

9.      Effective September 9, 2021, Defendant announced a mandatory COVID-19
vaccine policy.

10.     The last day for employees to submit accommodation requests or get vaccinated
was December 1, 2021.

11.     Those who submitted accommodation requests were encouraged to "withdraw
[their] exemption request" should their "beliefs change at any point in the request for exemption
process."

12.     Defendant never required non-employees entering its facilities, including visitors,
vendors, and independent contractors to be vaccinated.

13.     Defendant's accommodation process was arbitrary and inconsistent.

14.     Defendant supplied employees seeking accommodations with the "Vaccine
Religious Exemption Request Form," which stated, "Exemptions are not guaranteed. Exemptions
requested for any other reason, such as personal, social, or political objections, will not be granted."

15.     For each religious accommodation request, Defendant says it considered whether
the request met all the following criteria:

a.      The belief or practice is religious in nature;

3

      b.      The belief supports being unable to get the COVID-19 vaccine;

      c.      The belief is sincerely held.

16.    Defendant also stated that "Scripps will review this information and will determine if the evidence supports [their] claimed exemption," asserting that it will require "evidence" to support religious accommodations.

17.    Employees who submitted religious accommodation requests were made to overcome a presumption against the sincerity of their beliefs when sincerity should have been presumed.

18.    Employees who were denied religious accommodation to the vaccine mandate were forced into the horrible position of choosing between vaccination or termination:

> Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith.  It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children.  To many, this is the most horrifying of Hobson's choices.

*Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

**Plaintiffs' Employment and Accommodation Requests**

19.    Plaintiff Falzone was hired in March 2013 and was a Reporter at the time of the vaccine policy announcement.

20.    Plaintiff Lozano was hired in March 2016, and was a Sales Account Executive at the time of the vaccine policy announcement.

21.    Plaintive Price was hired on May 29, 2018 and was a Senior Sales Account Executive at the time of the vaccine policy announcement.

22.    Plaintiff Falzone attested that getting the COVID-19 vaccine would violate her "liberty of conscience and what God [was] calling [her] to do…"

23.    Plaintiff Falzone did not rely on a secular belief that she should be free to make her own decisions.

24.    At the time Plaintiff Falzone was forced to make this Hobson's choice about whether to be vaccinated or keep her livelihood, her vaccinated manager, Doug Bellah, was home sick with COVID-10.

25.    Plaintiff Falzone was only required to be in the office once per week.

26.    Plaintiff Falzone faced a crisis of conscience. The dilemma of following her faith and risking financial burden for her family or succumbing to external pressure weighed heavily on her.

27.    Plaintiff Falzone chose her faith and was terminated, despite having worked to become a broadcaster since high school and her identity being inextricably tied to her career.

28.    Plaintiff Falzone had been voted best female news personality in the Grand Rapids market in 2020.

29.    Plaintiff Falzone's supervisors never expressed any doubt in her faith.

30.    The decision to terminate Plaintiffs was made at a corporate level with no interactive process nor bilateral cooperation.

31.    Plaintiff Falzone was told that her termination "was a corporate decision" and that the local news outlet's "hands [were] tired."

32.    Plaintiff Price clearly espoused religious concerns about fetal cell lines and did not rely on a secular belief that he should be free to make his own decisions.

33.   Plaintiff Price submitted a Religious Exemption Request Form on September 27, 2021, which stated, in pertinent part:

> I am a member of the Catholic Church and because of my religious beliefs I am exercising my right to receive exemption from receiving the COVID-19 vaccine . . . I cannot in good conscience receive the vaccinations due to the fact that they all have either utilized aborted fetal cells during testing or the final product . . . I believe all human life is to be respected and I do not agree with these practices.

34.   Plaintiff Lozano unequivocally told Sales Manager Kate Morton and Director of Sales Chris Legg that she had been vaccinated.

35.   Plaintiff Lozano submitted a three-page letter detailing her strong opposition to the vaccination mandate on September 10, 2021, stating, in pertinent part:

> This letter explains how the Catholic Church's teachings may lead individual Catholics to decline certain vaccines . . . The Catholic Church teaches that a person may be required to refuse a medical intervention, including a vaccination, if his or her conscience comes to this judgment . . . There is a moral duty to refuse the use of medical products, including certain vaccines, that are created using human cells lines derived from abortion . . . [A]nd there is no authoritative Church teaching universally obliging Catholics to receive any vaccine . . . Furthermore, the free-exercise clause of the U.S. Constitution's First Amendment requires state accommodation of individuals who object to vaccinations on religious grounds.

36.   Plaintiff Lozano was terminated because she defended the rights of her colleagues to receive a religious accommodation—which of course is a protected activity under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").

37.   Defendant distributed identical October 12, 2021 accommodation request denial letters to Plaintiffs, stating, "The information provided does not demonstrate that the religious belief asserted supports being unable to get the vaccine or that the belief is 'sincerely held,' as required by law."

6

38.     Defendant did not engage or attempt to engage in an interactive process with Plaintiffs.

39.     Defendant did not discuss any potential accommodations with Plaintiffs, such as mask wearing, weekly testing, or social distancing.

40.     Plaintiff Lozano promptly requested more information regarding Defendant's denials.

41.     Defendant responded the following day, stating, "Each accommodation request was individually and objectively considered and reviewed by the Review Team following a specific process. The letter provides the rationale for the decision, and the Review Team will not individually discuss with employees the rationale of the decision."

42.     When Plaintiff Lozano asked if remote workers were required to be vaccinated, Defendant responded, "The vaccine mandate applies to all employees, regardless of work location."

43.     The religious accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

44.     Defendant did not engage in any interactive process or bilateral cooperation.

45.     Plaintiffs could have tested daily to confirm that they were not ill.

46.     Plaintiffs could have engaged in frequent sanitizing and disinfecting.

47.     Plaintiffs could have worn gloves and a face covering in the workplace.

48.     Before vaccines were developed, the accommodations sought by Plaintiffs were deemed sufficiently effective to protect employees in the workplace.

49.     Examples of reasonable accommodations include wearing a mask, working "at a social distance" from others, working a modified shift, getting tested, and being given the

opportunity to telework.  U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

50.   "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*.

51.   Plaintiffs had worked on Defendant's premises throughout the pandemic without causing any harm to themselves or their coworkers.

52.   Plaintiff Falzone was terminated on December 3, 2021.

53.   Plaintiff Lozano was terminated on December 2, 2021.

54.   Plaintiff Price was terminated on December 1, 2021.

55.   Defendant terminated Plaintiff Falzone and Plaintiff Price based on their alleged lack of a sincerely held religious belief, and not because reasonable accommodation would pose an undue hardship.

56.   Defendant terminated Plaintiff Lozano because she engaged in the protected activity of opposing the religious accommodation process and defending the religious freedoms of her colleagues.

57.   Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965).  Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

58.   The sincerity of Plaintiff's religious beliefs is not open to question.  *See Equal emp. Opportunity Comm'n v. Publix Super Markets, Inc*., 471 F. Supp. 3d 684, 699 (M.D. Tenn. 2020); *citing United States v Seeger*, 380 U.S. 163, 185 (1965) ("[T]he truth of a belief is not open to question).

59.     An individual's testimony about his or her belief "must be given great weight" and is enough to show she has a bona fide religious belief.  *See e.g., Seeger*, 380 U.S. at 184 (1965) (When dealing "with the beliefs of different individuals who will articulate them in a multitude of ways… the claim of the [party] that his [or her] belief is an essential part of a religious faith must be given great weight).

60.     Moreover, "[a]s long as a party's beliefs are religiously asserted, it is not for the courts to challenge the truthfulness of such assertions simply because they developed 'from revelation, study, upbringing, gradual evolution, or some source that appears entirely incomprehensible."  *E.E.O.C. v. Alliant Techsystems, Inc*., No. CIV.A. 98-0084-R, 1998 WL 777015, at *6 (W.D. Va. Sept. 18, 1998) (quoting *Hobbie v. Unemployment Comm'n of Fla*., 480 U.S. 136, 144 n. 9 (1987)).

61.     There is no evidence that would suggest Plaintiffs Falzone and Price lacked sincerely held religious beliefs.

62.     Defendant had no reason to doubt Plaintiffs' credibility.

63.     Plaintiffs Falzone and Price's religious conviction and the sincerity of their beliefs is highlighted by the fact they remained unvaccinated in the face of termination, losing their livelihood in the process.

**Defendant Did Not Base Its Decision on Undue Hardship,
Nor Could It Establish Undue Hardship**

64.     The prohibition against religious discrimination imposes an affirmative "duty" on employers to accommodate the religious observances of employees, absent a showing of "undue hardship."  *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

65.     The employer, rather than the employee, bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978).

66.     An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

67.     "A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships." *Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir.1988).

68.     Defendant is not claiming undue hardship.

**COUNT I**
**Violation of Elliott-Larsen Civil Rights Act ("ELCRA")**
**Religious Discrimination–Failure to Accommodate**
**(On Behalf of Plaintiffs Falzone and Price)**

69.     Plaintiffs restate the foregoing paragraphs as set forth herein.

70.     Plaintiffs were employees for the purposes of ELCRA.

71.     Defendant is an employer for the purposes of ELCRA.

72.     An employer shall not discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of the individual's religion. MCL 37.2202(1)(a).

73.     Plaintiff Falzone and Plaintiff Price can establish a *prima facie* case of discrimination by showing that (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) she informed her employer of this belief; and (3) she suffered an adverse employment action for "failure to comply with the conflicting employment requirement." *Ansonia Bd. of Educ.*, 479 U.S. at 65–66.

74.     Plaintiff Falzone and Plaintiff Price hold a *bona fide* religious belief that conflicts with the vaccine mandate.

75.     Plaintiff Falzone and Plaintiff Price informed their employer of this religious belief.

76.     Defendant evaded any sort of bilateral cooperation.

77.     Multiple reasonable accommodations could have been offered without undue hardship, including sanitizing, disinfecting, handwashing, mask-wearing, and testing.

78.     Defendant never explained why Plaintiff Falzone and Plaintiff Price could not be accommodated.

79.     Defendant never explained why Plaintiffs' preferred accommodations were not granted.

80.     Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests for accommodation, and they will so suffer in the future.

81.     Plaintiffs have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the denial of their requests, and they will so suffer in the future.

82.     Plaintiffs have been required to employ the services of an attorney.

83.     Defendant's actions were intentional and/or reckless.

**COUNT II**
**Violation of Elliott-Larsen Civil Rights Act ("ELCRA")**
<u>**Religious Discrimination–Retaliation**</u>
<u>**(On Behalf of all Plaintiffs)**</u>

84.     Plaintiffs restate the foregoing paragraphs as set forth herein.

85.     Two or more persons shall not conspire to, or an individual person shall not on his or her own, retaliate against a person because the person has opposed a violation of ELCRA.  MCL 37.2701(a).

86.     Plaintiffs can establish *prima facie* cases of retaliation by showing (1) that they engaged in a protected activity; (2) that was known by the employer; (3) that the employer took an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action.  *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 161 (2019).

87.     Plaintiffs Falzone and Plaintiff Price engaged in protected activity when they submitted a written request for a religious accommodation to the vaccine mandate.

88.     Plaintiff Lozano engaged in protected activity when she opposed Defendant's religious accommodation practices.

89.     The Sixth Circuit has recognized a claim for discrimination under Title VII based on one's "advocacy on behalf of protected class members."  *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009).

90.     In *Johnson v. University of Cincinnati*, 215 F.3d 561, 575 (6th Cir. 2000), where the plaintiff alleged that he was fired due to his "advocacy on behalf of minorities," the Sixth Circuit opined, "the fact that [p]laintiff has not alleged discrimination because of his race is of no moment inasmuch as it was a racial situation in which [p]laintiff became involved."

91.     That Ms. Lozano was vaccinated does not preclude her from being retaliated against based on her advocacy for employees seeking religious accommodation.

92.     Defendant retaliated against Plaintiffs by terminating them.

93.     Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct, and they will so suffer in the future.

94.     Plaintiffs have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the retaliatory conduct, and they will so suffer in the future.

95.     Plaintiffs have been required to employ the services of an attorney.

96.     Defendant's actions were intentional and/or reckless.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

a.      Compensatory damages for monetary and non-monetary loss;

b.      Exemplary and punitive damages;

c.      Prejudgment interest;

d.      Attorneys' fees and costs; and

e.      Such other relief as in law or equity may pertain.

Respectfully submitted,

HURWITZ LAW PLLC

/s/ Noah S. Hurwitz
Noah S. Hurwitz (P74063)
617 Detroit St., STE 125
Ann Arbor, MI 48104
*Attorneys for Plaintiff*
(844) 487-9489
noah@hurwitzlaw.com

Dated: July 5, 2022

13

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEANNE FALZONE, CLAUDETTE
LOZANO, DAVID PRICE,

        Plaintiffs,                        Case No.

v.

                                              Hon.

SCRIPPS MEDIA, INC.

        Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs Deanna Falzone, Claudette Lozano, and David Price, by and through their

attorneys, HURWITZ LAW PLLC, hereby demand a trial by jury in the above-captioned matter

for all issues triable.

                                        <u>/s/ *Noah S. Hurwitz*</u>
                                        Noah S. Hurwitz (P74063)
                                        *Attorneys for Plaintiff*
                                        (844) 487-9489
Dated: July 5, 2022                          noah@hurwitzlaw.com

14