UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAUDETTE LOZANO, and
DAVID PRICE,

    Plaintiffs,

v.

SCRIPPS MEDIA, INC.,

    Defendant.

Case No: 22-cv-00612

Hon. Jane M. Beckering

Mag. Judge Phillip J. Green

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiffs*
617 Detroit St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwtizlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

Elizabeth Hardy (P37426)
Sonja Lengnick (P67101)
David Porter (P76785)
KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.
*Attorneys for Defendant*
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com
slengnick@khvpf.com
dporter@khvpf.com

**DEFENDANT SCRIPPS MEDIA, INC.'S d/b/a WXMI-TV SUPPLEMENTAL
BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

## INTRODUCTION

The Court directed the parties to file supplemental briefs addressing two questions relating to Plaintiffs' motion to compel:

(1) Whether Plaintiffs' religious discrimination – failure to accommodate claim (Count I) is distinct from a disparate treatment claim such that comparator evidence is not relevant to the claim.

Scripps' Answer: Yes.

(2) Whether the Court can consider Plaintiffs' retaliation claim (Count II) in connection with the motion to compel.

Scripps' Answer: No.

## DISCUSSION

### I. All courts, before and after *Abercrombie*, agree that failure-to-accommodate and disparate-treatment are distinct legal claims under Title VII.

This Court recognized just three months ago: "There are two basic types of religious discrimination claims that an individual may bring . . . under Title VII: disparate treatment claims and religious accommodation claims." *Haskins v. Bio Blood Components*, No. 22-cv-586, 2023 WL 2071483, at *2 (W.D. Mich. Feb. 17, 2023) (quoting *Reed v. Int'l Union*, No. 07-2505, 2009 WL 5943111, at *2 (6th Cir. May 7, 2009)).

Those "two basic types" of claims embody distinct legal theories. Disparate treatment claims require plaintiffs to establish intentional discrimination or that they were treated less favorably than similarly situated applicants or employees because of their religion. *Reed*, 2009 WL 5943111, at *2. In contrast, a plaintiff who takes "the accommodation path," *id.*, is alleging that the employer has failed to reasonably accommodate a conflict between an employment requirement and a

sincerely-held religious belief. When pursuing an accommodation claim, as Plaintiff Price is here, a plaintiff must establish a three-part prima facie case, showing that "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015); *Tepper v. Potter,* 505 F.3d 508, 514 (6th Cir. 2007). If the plaintiff meets these elements, the burden shifts to the employer to show that it could not "reasonably accommodate" his religious beliefs without "undue hardship." *Id.*[1]

In this case, only the first element—whether Plaintiff Price had a sincere religious belief that conflicted with Scripps' vaccine policy—is in dispute. But that element (and the other two) does not require Price to show that he was treated any differently than other accommodation seekers. Whether other employees were granted or denied exemption requests is irrelevant to whether *Price's* asserted belief was sincere, religious, and conflicted with Scripps' policy.

---

[1] Every other circuit endorses this distinct burden-shifting framework for failure to accommodate claims. *See Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc.*, 673 F.3d 1, 8 (1st Cir. 2012); *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006); *EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010); *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008); *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014); *Porter v. City of Chicago*, 700 F.3d 944, 951–54 (7th Cir. 2012); *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003); *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993); *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000); *Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1293 (11th Cir. 2012); *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 95 (D.D.C. 2006) (stating that "Title VII's reasonable accommodations provision is not governed by the *McDonnell Douglas* framework" and adopting the prima facie case recognized by the other circuits).

It is for this reason that courts in the related ADA accommodation context have uniformly held that comparator evidence "has no role whatsoever in a failure to accommodate claim." *Green v. United Parcel Serv., Inc.*, No. 18-cv-8744, 2019 WL 1430244, at *1 (E.D. La. Mar. 29, 2019). It is irrelevant as a matter of law. *See Patel v. DeJoy*, No. 19-cv-03331, 2022 WL 17850358, at *10 (N.D. Ill. Dec. 22, 2022) (holding that "lack of comparators" is "not [a] required element[] of a failure to accommodate claim"); *Richardson v. Honda Mfg. of Alabama, LLC*, 635 F. Supp. 2d 1261, 1278 (N.D. Ala. 2009) (same); *Brunker v. Schwan's Food Serv., Inc.*, No. 04-cv-478, 2006 WL 1707272, at *3 (N.D. Ind. June 21, 2006) (same); *Young v. Sungard Fin. Sys., L.L.C.*, No. 12-cv-1631, 2014 WL 1576903, at *8 n.8 (N.D. Ala. Apr. 17, 2014).[2]

The Supreme Court's decision in *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015), did not purport to alter this longstanding and widely accepted framework governing failure-to-accommodate claims. It addressed a narrow question within the confines of that universally accepted framework: whether a plaintiff must inform an employer of the need for an accommodation to state a claim for religious discrimination under the failure to accommodate theory. *Id.* at 770. *Abercrombie* held

---

[2] Plaintiffs have suggested that these cases are inapposite because they arose in the ADA context. But "[a] claim of religious discrimination under Title VII is similar to a claim under the ADA because, in both situations, the employer has an affirmative obligation to make a reasonable accommodation." *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 n.5 (10th Cir. 2000). The rationale for an ADA failure-to-accommodate prima facie case "also applies" to analogous claims under Title VII. *Id.* at 1155 n.6; *see also Eckles v. Consolidated Rail Corp.*, 94 F.3d 1041 (7th Cir. 1996) (analogizing the standards for analyzing Title VII and ADA accommodation claims); *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 238 (2015) (Alito, J., concurring) (analogizing ADA and Title VII failure-to-accommodate provisions).

3

that an employer need not have "actual knowledge" of a plaintiff's need for accommodation if the plaintiff can show that his or her need for an accommodation was a motivating factor in the employer's adverse employment action. *Id*. at 772–74.

Plaintiffs seem to suggest that, following *Abercrombie*, all failure to accommodate claims are now treated as disparate treatment claims. Mot. to Extend, ECF No. 48, PageID.507, citing *Abercrombie*, 575 U.S. at 768. Plaintiffs are reading too much into *Abercrombie*. As several lower courts have observed, *Abercrombie* "did not explicitly rework the elements of the *prima facie* case" for failure to accommodate claims. *Equal Emp. Opportunity Comm'n v. Jetstream Ground Servs., Inc.*, 134 F. Supp. 3d 1298, 1318 (D. Colo. 2015). It merely "lowered a plaintiff's burden on the second prong." *Equal Emp. Opportunity Comm'n v. Kroger Ltd. P'ship I*, 608 F. Supp. 3d 757, 776 n.126 (E.D. Ark. 2022); *see also Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 & 1175 n.4 (11th Cir. 2021) (modifying the second element of the prima facie case to account for *Abercrombie*).

Thus, the Sixth Circuit and this Court have continued to recognize failure-to-accommodate as a legal claim distinct from disparate treatment that contains different elements and follows a different analytical framework. *See Truskey v. Vilsack*, No. 21-5821, 2022 WL 3572980, at *2 (6th Cir. Aug. 19, 2022), citing *Tepper v. Potter*, 505 F.3d at 514; *Bolden v. Lowes Home Centers, LLC*, 783 F. App'x 589, 597 (6th Cir. 2019) (same, and treating discriminatory termination claim as a distinct

4

from failure-to-accommodate claim); *Haskins v. Bio Blood Components*, No. 22-cv-586, 2023 WL 2071483, at *2 (W.D. Mich. Feb. 17, 2023) (same).[3]

If Plaintiffs are right that *Abercrombie* altered the framework for failure to accommodate claims such that they are now analyzed as traditional disparate treatment claims, then the recent decisions from the Sixth Circuit, this Court, and every other circuit, *see supra* n.3, are wrong. So is Plaintiffs' own counsel, who recently filed a complaint in another vaccine-mandate discharge case that alleges "religious discrimination–disparate treatment" and "religious discrimination–failure to accommodate" as two separate causes of action with different elements and supporting allegations. *See Barr et. al v. Corewell Health*, No. 23-cv-10808 (E.D. Mich.), Compl., ECF No. 1, PageID.11–14.

Of course, if Plaintiffs are merely suggesting that religious discrimination claims *can* be brought as either disparate treatment claims, failure to accommodate

---

[3] The same is true of other circuits after *Abercrombie*. *See Brox v. Hole*, 590 F. Supp. 3d 359, 366 (D. Mass. 2022) (citing *Sanchez-Rodriguez*, 673 F.3d at 12); *Patel v. NYU Langone Hosps.*, No. 20-112, 2021 WL 4852426, at *2 (2d Cir. Oct. 19, 2021) (citing *Baker v. Home Depot*, 445 F.3d at 546); *Groff v. DeJoy*, 35 F.4th 162, 168 (3d Cir. 2022) (citing *GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010); *E.E.O.C. v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (citing *Firestone Fibers*, 515 F.3d at 312); *Horvath v. City of Leander*, 946 F.3d 787, 791 (5th Cir. 2020) (citing *Davis*, 765 F.3d at 485); *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 883 (7th Cir. 2023); *E.E.O.C. v. Kroger Ltd. P'ship I*, 608 F. Supp. 3d 757, 776 n.126 (E.D. Ark. 2022) (citing *Jones*, 319 F.3d at 359); *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023) (citing *Heller*, 8 F.3d at 1438); *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018) (citing *Thomas*, 225 F.3d at 1155); *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021) (citing *Walden*, 669 F.3d a 1293); *Lurensky v. Wellinghoff*, 167 F. Supp. 3d 1, 14 (D.D.C. 2016) (citing *Lemmons*, 431 F. Supp. 2d at 95).

claims, or both, then they necessarily agree with Scripps that they are distinct claims. In that event, the only question is which claim or claims Plaintiffs have pled here.

There is no question that Plaintiffs are raising one—and only one—religious discrimination claim. It is indisputably a failure to accommodate claim. And any suggestion that Count 1 is simultaneously a failure to accommodate claim *and* a disparate treatment claim is belied by its form and substance. It explicitly cites the longstanding prima facie case for failure to accommodate claims in Paragraph 80. And none of the other allegations even remotely suggest—and thus put Scripps on notice—that Price is alleging that the accommodation review team treated him differently than other employees because he was Catholic or had sought a religious exemption to the vaccination policy.[4] **The bottom line is this**: Plaintiffs agree that disparate treatment and failure to accommodation are two distinct theories of liability under Title VII, and they consciously decided to allege only one of those theories in their complaint, limiting the universe of consequential facts (and hence discovery) to those relating to the traditional failure to accommodate theory.

In fact, the unrebutted record evidence establishes that of the 158 religious exemptions requests, many of them were granted including several who declared

---

[4] This stands in marked contrast to Plaintiffs' counsel's *Barr* complaint, which alleges that the defendant "allowed other unvaccinated employees without Plaintiffs' same religious beliefs to be exempted from Defendant's vaccine mandate policy" and that the plaintiffs "were treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated." *Barr*, No. 23-cv-10808 (E.D. Mich.), Compl., ECF No. 1, PageID.14.

6

themselves Catholic.[5] Again, the only disputed issue relevant to Count 1 is whether Scripps made a lawful decision when it concluded that Price[6] did not have a sincerely held religious belief that prevented him from taking the COVID-19 vaccination. When his request was denied, and he still refused to be vaccinated, he was terminated, as were all other Scripps employees who were non-compliant with the policy.

In addition to arguments previously asserted, Scripps notes that Plaintiffs' request for comparator discovery under the guise of a disparate treatment claim makes no sense even if the Court finds that accommodation and disparate treatment claims are one and the same. Religious exemption requests submitted by other Scripps employees would not shed any light on whether protected employees (i.e., those asserting religious objections to the vaccine policy) were treated less favorably than those in a non-protected status, *since everyone who sought a religious exemption request is part of the same protected class*. The production of that information would also be highly burdensome and disproportionate, ballooning an issue that only concerns Plaintiff Price into voluminous discovery pertaining to 157 other purported comparators.[7]

---

[5] This is another distinction from *Abercrombie*. Unlike the employer in that case, Scripps established a robust exemption process—carried out by experienced human resources professionals from across the country—and advised employees of their rights to seek an exemption.

[6] Plaintiff Lozano also submitted an accommodation request, which Scripps denied, but it was later discovered in this litigation that, contrary to what she claimed in her accommodation request, she had taken the first dose of the COVID-19 vaccine prior to Scripps' announcement of its policy and the second dose prior to her termination.

[7] In their latest supplemental brief, Plaintiffs substantially increased the amount of additional time for discovery, from two months to five months. No additional

7

## II. The Court should adhere to the party presentation principle and decline to consider a relevancy argument that Plaintiffs have never made.

This Court has also asked whether it can consider the existence of Plaintiffs' retaliation claim in ruling on Plaintiffs' motion to compel. Based on the Court's questions during the hearing, Scripps understands this question to refer to Plaintiffs' requests for comparator evidence (Interrogatories 5 and 6 and Document Requests 17, 23, and 24). Scripps answers this question "no" for two reasons: (1) Plaintiffs have never taken this position and (2) regardless, the requests have no relevance to Plaintiffs' retaliation claim.

First, Plaintiffs have never taken the position that their requests for comparator evidence relating to the accommodation process is relevant to their retaliation claim. Scripps objected to these requests on relevance grounds, and once it did, "the burden shift[ed] to the party seeking the information to demonstrate that the requests are relevant to some claim or defense in the pending action." *Steede v. Gen. Motors, LLC*, No. 11-cv-02351, 2012 WL 6846529, at *4 (W.D. Tenn. Nov. 2, 2012). As Plaintiffs' counsel acknowledged during the hearing, at no point during the meet and confer process did Plaintiffs suggest these requests were relevant to their retaliation claim. Nor did they argue that in their motion. They argued instead that such information was relevant to their supposed disparate treatment claim.

---

discovery is warranted at all, but even under Plaintiffs' own rationale—pursuing discovery on other accommodation seekers—five months is incredibly excessive and amounts to virtual do-over over of discovery for a theory Plaintiffs never pled.

The Court should not raise and resolve this new relevancy argument for Plaintiffs. The Supreme Court recently reiterated the importance of adhering to the party presentation principle. In the federal system, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 206 L. Ed. 2d 866 (May 7, 2020), quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). That system "is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *United States v. Sineneng-Smith*, 206 L. Ed. 2d 866 (May 7, 2020). There are times when "a modest initiating role for a court is appropriate," but such limited departures from the general rule typically arise in criminal cases or "to protect a *pro se* litigant's rights." *Id.*

Neither circumstance is present here, and, regardless, the Court would be playing far more than a "modest initiating role" if it were to rule that Plaintiffs' comparator-evidence requests were relevant to Plaintiffs' retaliation claim. Such a ruling, even after an opportunity for supplemental briefing (as was also the case in *Sineneng-Smith*), would be a "radical transformation" of Plaintiffs' litigation position. *Id.* Plaintiffs, ably represented by competent counsel, never argued that Interrogatories 5 and 6 and Document Requests 17, 23, and 24 were relevant to their retaliation claim, presumably because they understood that their retaliation claim is predicated solely on their *termination*, not the denial of their accommodation. Second Am. Compl., ECF No. 11, PageID.81 ("99. Defendant retaliated against Plaintiffs by

9

terminating them."). Instead, they presented this Court with a narrow discovery dispute: whether to compel responses to these requests because they are relevant to Plaintiffs' supposed disparate-treatment claim. *See* Mot. to Compel, ECF No. 38, PageID.341. The Court should resolve that dispute and no more.

The distinction between "termination" and "accommodation" is critically important in cases like this. Scripps' accommodation process was entirely separate from Plaintiffs' subsequent termination. Those directly involved in carrying out Plaintiffs' mandatory terminations were not involved in the accommodation process, which occurred months earlier. How the accommodation review committee treated other employees during the accommodation process has no relevance to whether different managers with no knowledge of the accommodation process retaliated against Price and Lozano by terminating their employment. There is also no dispute that local management was compelled to process the terminations of employees like Plaintiffs who were not compliant with the corporate policy. For this second reason, the Court should not consider Plaintiffs' retaliation claim in ruling on this aspect of Plaintiffs' motion to compel.

                                                         Respectfully submitted,

                                                         Kienbaum Hardy Viviano
                                                          Pelton & Forrest, P.L.C.

                                                        By: */s/ Elizabeth Hardy*
                                                        Elizabeth Hardy (P37426)
                                                        Attorneys for Defendant
                                                        280 N. Old Woodward Ave., Suite 400
                                                        Birmingham, MI 48009
                                                        (248) 645-0000
Dated: May 5, 2023                         ehardy@khvpf.com

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(b)**

  I hereby certify that Defendant Scripps Media, Inc.'s d/b/a WXMI-TV Supplemental Brief In Opposition To Plaintiffs' Motion To Compel contains 2,861 countable words. *See* W.D. Mich. 7.3(b)(ii). Microsoft Word (Version 2304) was used to calculate the word count.

           By: */s/ Elizabeth Hardy*
           Elizabeth Hardy (P37426)
           280 N. Old Woodward Ave., Suite 400
           Birmingham, MI 48009
           (248) 645-0000
           ehardy@khvpf.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 5, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

                                      */s/ Elizabeth Hardy*
                                      Kienbaum Hardy
                                       Viviano Pelton & Forrest, P.L.C.
                                      280 N. Old Woodward Ave., Suite 400
                                      Birmingham, MI  48009
                                      (248) 645-0000
                                      ehardy@khvpf.com
                                      (P37426)

482237