# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CLAUDETTE LOZANO, and
DAVID PRICE,

     Plaintiffs,

v.

SCRIPPS MEDIA, INC.,

     Defendant.

Case No: 22-cv-00612

Hon. Jane M. Beckering

Mag. Judge Phillip J. Green

_____/

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Elizabeth Hardy (P37426) |
| Grant M. Vlahopoulos (P85633) | Sonja Lengnick (P67101) |
| Kara F. Krause (P85487) | David Porter (P76785) |
| HURWITZ LAW PLLC | KIENBAUM HARDY VIVIANO |
| *Attorneys for Plaintiffs* | PELTON & FORREST, P.L.C. |
| 617 Detroit St., Suite 125 | *Attorneys for Defendant* |
| Ann Arbor, MI 48104 | 280 N. Old Woodward Ave., Suite 400 |
| (844) 487-9489 | Birmingham, MI 48009 |
| noah@hurwtizlaw.com | (248) 645-0000 |
| grant@hurwitzlaw.com | ehardy@khvpf.com |
| kara@hurwitzlaw.com | slengnick@khvpf.com |
| | dporter@khvpf.com |

_____/

## DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT

## TABLE OF CONTENTS

<u>Page</u>

Table of Contents.................................................................................................... i

Index of Authorities............................................................................................... ii

Argument ............................................................................................................... 1

I.      The framework endorsed by the EEOC and courts everywhere—not
        Price's *ipse dixit*—controls whether Price's asserted belief is "religious."........ 1

II.     Plaintiffs have no evidence of causation or pretext to present to a jury
        on their retaliation claim................................................................................ 5

Conclusion and Relief Requested......................................................................... 8

# INDEX OF AUTHORITIES

**Page**

**Cases**

*Africa v. Com. of Pa.*,
  662 F.2d 1025 (3d Cir. 1981)...................................................................................... 1, 2

*Cain v. MDOC*,
  2008 WL 8224197 (W.D. Mich. Mar. 31, 2008) ..................................................... 2

*Clark Cnty. Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001) .................................................................................................... 5

*Cutter v. Wilkinson*,
  349 F.3d 257 (6th Cir. 2003) ..................................................................................... 2

*Cutter v. Wilkinson*,
  544 U.S. 709 (2005) ..................................................................................................... 2

*Equal Employment Opportunity Comm'n. v. Publix Super Markets, Inc.*,
  481 F. Supp. 3d 684 (M.D. Tennessee 2020) .......................................................... 5

*Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*,
  877 F.3d 487 (3d Cir. 2017)....................................................................................... 1, 2

*Fogerty v. MGM Group Holdings Corp., Inc.*,
  379 F.3d 348 (6th Cir. 2004) ..................................................................................... 7

*Friedman v. S. Cal. Permanente Med. Grp.*,
  102 Cal. App. 4th 39 (2002) ...................................................................................... 2

*Glover v. Nationwide Mut. Fire Ins. Co.*,
  676 F. Supp. 2d 602 (W.D. Mich. 2009).................................................................. 7

*Green v. Tudor*,
  685 F. Supp. 2d 678 (W.D. Mich. 2010).................................................................. 2

*Ketzner v. Williams*,
  2008 WL 4534020 (W.D. Mich. Sept. 30, 2008) ..................................................... 2

*LaPine v. Lincoln*,
  2023 WL 3871925 (W.D. Mich. Mar. 27, 2023) ..................................................... 7

*Reynolds v. Fed. Express Corp.*,
  2012 WL 13075508 (W.D. Tenn. Dec. 4, 2012)....................................................... 5

*Rutledge v. Niles Expanded Metals,*
2015 WL 5022012 (N.D. Ohio Aug. 20, 2015) ........................................................ 6

*Salaam v. McKee,*
2008 WL 363598 (W.D. Mich. Feb. 11, 2008)........................................................ 2

*Spies v. Voinovich,*
173 F.3d 398 (6th Cir. 1999) .................................................................................. 3

*Viet v. Le,*
951 F.3d 818 (6th Cir. 2020) .................................................................................. 4

## Other Authorities

Congregation for the Doctrine of the Faith,
*Note on the Morality of Using Some Anti-COVID-19 Vaccines* (Dec. 12,
2020) ....................................................................................................................... 3

EEOC Compliance Manual § 12–I(A)(1), (Jan. 2021) ............................................ 1, 2

## ARGUMENT

**I.    The framework endorsed by the EEOC and courts everywhere—not Price's *ipse dixit*—controls whether Price's asserted belief is "religious."**

In defending the religiosity of his belief, Price asks this Court to ignore the only coherent framework used by courts to assess the religiosity of a plaintiff's asserted belief. The reason, he says, is because the cases cited by Scripps applying the framework "have never been cited by the U.S. Equal Employment Opportunity Commission." (Plft MSJ Resp., ECF No. 62, PageID.1068.) If citation by the EEOC is the litmus test, then Price's argument fails on its own terms. The EEOC Compliance Manual on Religious Discrimination endorses the same framework and cites the same authority as Scripps' motion when explaining how to tell whether a given belief is "religious" under Title VII:

> Courts have looked for certain features to determine if an individual's beliefs can be considered religious.  As one court explained: 'First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters.  Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching.  Third, a religion often can be recognized by the presence of certain formal and external signs.'
>
> Social, political, or economic philosophies, as well as mere personal preferences, are not religious beliefs protected by Title VII.

EEOC Compliance Manual § 12–I(A)(1), (Jan. 2021), citing *Africa v. Com. of Pa.*, 662 F.2d 1025, 1032 (3d Cir. 1981), and *Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d 487, 491 (3d Cir. 2017).

Price also contends that *Africa*'s framework has not been adopted by the Sixth Circuit. (Plft MSJ Resp., ECF No. 62, PageID.1068-69.) But that is not entirely true,

either. *Africa* was cited favorably in *Cutter v. Wilkinson*, 349 F.3d 257, 267 (6th Cir. 2003) (overruled on other grounds by *Cutter v. Wilkinson*, 544 U.S. 709 (2005)). And it has been followed a dozen times by other district courts within the Sixth Circuit, including four times by this Court. *See Green v. Tudor*, 685 F. Supp. 2d 678, 696 n.8 (W.D. Mich. 2010); *Ketzner v. Williams*, No. 06-cv-73, 2008 WL 4534020, at *21 n.11 (W.D. Mich. Sept. 30, 2008); *Cain v. MDOC*, No. 07-cv-543, 2008 WL 8224197, at *29 n.26 (W.D. Mich. Mar. 31, 2008); *Salaam v. McKee*, No. 05-cv-097, 2008 WL 363598, at *10 n.6 (W.D. Mich. Feb. 11, 2008). Price does not suggest that the Sixth Circuit uses a different approach that is inconsistent with *Fallon* and *Africa*. Given the sparse case law on this issue, it is entirely appropriate for this Court to do what the EEOC does and apply the framework of *Fallon*, *Africa*, and the consensus of other courts. See *Friedman v. S. Cal. Permanente Med. Grp.*, 102 Cal. App. 4th 39, 61 (2002) (collecting cases endorsing *Africa*'s framework and observing that "[c]ommentators have recognized [it] as the most influential judicial opinion in the past several decades in terms of defining religion").

True, some of these cases cited above and in Scripps' motion involve claims under the First Amendment or other federal statutes. But that is no reason to not follow them, as Price seems to suggest. (Plft MSJ Resp., ECF No. 62, PageID.1068.) Even the EEOC looks to related laws for authority in assessing the religiosity of beliefs under Title VII. EEOC Compliance Manual § 12–I(A)(1) nn. 19–26. Courts do, too. *See, e.g.*, *Fallon*, 877 F.3d at 491, (Title VII case citing *Africa*, a First Amendment case).

Price also argues that, although a framework may be necessary for "unorthodox" beliefs, it is not necessary to test "orthodox" ones like his. (Plft MSJ Resp., ECF No. 62, PageID.1070.) But orthodoxy is not determinative of religiosity, precisely because defining orthodoxy is like pinpointing the moment day turns into night. *See Spies v. Voinovich*, 173 F.3d 398, 409 (6th Cir. 1999) ("Courts are ill-equipped to act as arbiters of the tenets of religious faith."). For that same reason, no case limits courts or employers to inquiring into only "unorthodox" beliefs.

In any event, Price's asserted belief was, by any measure, "unorthodox." Yes, "Price expressed that he belongs to a religious organization" (*see* Plft MSJ Resp., ECF No. 62, PageID.1070), but that religious organization does not support his expressed beliefs. Price acknowledged during his deposition that the official position of the Catholic Church is that "it is morally acceptable to receive Covid-19 vaccines that have used cell lines from aborted fetuses in their research and production process" when "ethically irreproachable Covid-19 vaccines are not available." Congregation for the Doctrine of the Faith, *Note on the Morality of Using Some Anti-COVID-19 Vaccines* (Dec. 12, 2020). (*See* Price Dep., ECF No. 59-2, PageID.828, pp. 104–105.) The Church allows each individual congregant to decide, as a voluntary *personal* matter, whether to take the vaccine. *Id*. That is the portion of the Church's position statement that Price quoted in his accommodation request; but personal choice is not, by definition, a "religious" belief. If it were, any employee with a personal disagreement with a work rule could demand an exemption citing their "religious" belief (read: personal preference).

Price does not argue that his belief qualifies as a religious belief under the authority set forth in Scripps' motion.  He instead points to the fact that he referenced fetal cells and abortion as though that were enough to show that his objection was indisputably "religious in nature." (Plft MSJ Resp., ECF No. 62, PageID.1068.) But *saying* your belief was "religious" is not the same as *showing* it. Bare statements unadorned by citation to record evidence and legal authority are not enough to defeat a properly supported summary judgment motion. *See Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020). As Scripps argued in its motion, simply couching an accommodation request in religious vernacular does not make it religious.  According to Price's own explanation, his concern with the use of fetal cells was not a manifestation of some broader set of beliefs that drives the way he carries out his everyday life. (*See* Price Dep., ECF No. 59-2, PageID.823–24, 834, pp. 85-88, 127-28.) The organizing principle behind his moral gerrymandering was not some fundamental belief in the sanctity of life or his bodily temple, but in his strongly held conviction against mandates. As he put it, "it's the being forced to take it with the risk of losing my employment is the issue that I have." (*Id.* at PageID.824, p. 88.) By definition, this opposition stems not from a universal teaching about a practice that he morally opposes, but from an isolated secular conviction in bodily autonomy and free choice couched in religious terminology. Scripps is entitled to summary judgment on Price's failure-to-accommodate claim.[1]

---

[1] Price's response also discusses the sincerity of his belief.  Scripps is puzzled by the discussion because its motion did not argue that Price could not satisfy this element of his failure-to-accommodate claim. Nor was Scripps required to do so since

**II.    Plaintiffs have no evidence of causation or pretext to present to a jury on their retaliation claim.**

Plaintiffs' response fails to demonstrate a genuine issue of material fact on critical elements of their prima facie case and the element of pretext. This failing is most pronounced for the causation element of the prima facie case and Plaintiffs' suggestion that they can establish pretext by declaring Scripps' stated reason for termination is "unworthy of credence."

***Prima Facie Case***. Plaintiffs rely *solely* on temporal proximity to establish a causal relationship between their purported protected activity and termination. (Plft MSJ Resp., ECF No. 62, PageID.1075–77.) But temporal proximity is *never* enough when, as here, the employer announces that will take a particular adverse action *before* the plaintiff engaged in purported protected activity. As the U.S. Supreme Court explained in *Clark Cnty. Sch. Dist. v. Breeden*, "Employers need not suspend previously planned [adverse actions] upon discovering that [an employee has engaged in protected activity], and their proceeding along lines previously contemplated, though not yet definitively determined, *is no evidence whatever of causality*." 532 U.S. 268, 272 (2001) (emphasis added); *see also Reynolds v. Fed. Express Corp.*, No. 09-cv-2692, 2012 WL 13075508, at *7 (W.D. Tenn. Dec. 4, 2012) (holding that the plaintiff

---

"sincerity" is an independent requirement that Price must prove in addition to "religiosity." In any event, Price concedes that, "[a]t a minimum, the question [of sincerity] 'should be reserved for the factfinder at trial.'" (Plft MSJ Resp., ECF No. 62, PageID.1073 (quoting *Equal Employment Opportunity Comm'n.*, 481 F. Supp. 3d at 700).) Scripps agrees in this case and asks this Court to hold Price to his concession when ruling on his cross motion seeking summary judgment *in his favor* on this issue.

"would have to show more than mere temporal proximity" because it was undisputed that the employer "contemplated" termination before the protected activity).

Here, Scripps notified all employees, including Plaintiffs, that it would terminate anyone who failed to comply with the vaccine policy by uploading written proof of vaccination by December 1. (Vaccine Announcement, ECF No. 59-7, PageID.980.) When Plaintiffs failed to comply with the policy, Scripps implemented its previously announced policy. *See Rutledge v. Niles Expanded Metals*, No. 14-cv-12, 2015 WL 5022012, at *6 (N.D. Ohio Aug. 20, 2015) ("[I]f defendants succeed in showing that a decision to terminate occurred before the protected activity, the execution of the decision is not evidence of causality."). And, importantly, it did so uniformly and without exercising any discretion. It is undisputed that Scripps terminated the employment of all employees who failed to comply with its vaccine policy, even those who did not seek an accommodation (something Plaintiffs say is protected activity) or otherwise complain about the policy. (*See* Anderson Dec., ECF No. 59-6, PageID.978 ¶ 4.)

*Pretext*. Plaintiffs also contend that they can establish pretext by showing that Scripps' stated reason for termination (their failure to comply with the vaccine policy) is "not worthy of credence." (Pltf MSJ Resp., ECF No. 62, PageID.1078.) According to Plaintiffs, "A reasonable juror could that that terminating remote workers for non-compliance, when they both engaged in protected activity, including by submitting religious exemption requests, is "unworthy of credence," especially considering one of them was vaccinated. (*Id*.) In other words, Plaintiffs' pitch for denying summary

judgment is that the jury could disbelieve the unrebutted affidavit of Candace Anderson that Scripps terminated every employee who failed to upload written proof of vaccination, regardless of whether they submitted accommodation requests, worked remotely, or were actually vaccinated.

That is not a winning argument. As Magistrate Judge Green recently stated, "[a] non-moving party cannot . . . have a trial on the hope that a jury may disbelieve factually uncontested proof." *LaPine v. Lincoln*, No. 22-cv-675, 2023 WL 3871925, at *3 (W.D. Mich. Mar. 27, 2023), quoting *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004). When faced with sworn evidence at the summary judgment stage, the plaintiff must produce some contrary evidence that raises a triable issue of fact. The plaintiff cannot merely argue that the sworn evidence is "unworthy of credence." "A mere argument that the opponent's unrebutted proofs may not be believed by the trier of fact is insufficient to escape a summary judgment." *Glover v. Nationwide Mut. Fire Ins. Co.*, 676 F. Supp. 2d 602, 611 (W.D. Mich. 2009).

The fact that Lozano told some Scripps managers that she was vaccinated does not change things. Scripps required *written proof* of vaccination so that the health and safety of its employees did not depend on the say-so of self-interested employees opposed to the vaccine. Lozano's misrepresentation of her vaccination status during the accommodation process is a prime example of the kind of misrepresentations Scripps wanted to avoid with a written proof requirement. It is undisputed that Lozano did not submit written proof of vaccination despite being told multiple times

7

that she still needed to do so after merely telling Scripps that she was vaccinated. (Bellah-Lozano Policy Compliance Emails, ECF No. 59-24, PageID.1022.) Scripps applied its written-proof requirement to Lozano the same as it did every other employee who may or may not have been vaccinated, negating any suggestion that its implementation was pretext for retaliatory animus.

Because the undisputed portions of the record show that Plaintiffs cannot establish a prima facie case or pretext, Scripps is entitled to summary judgment on their retaliation claim.

## CONCLUSION AND RELIEF REQUESTED

Scripps asks this Court to grant its motion for summary judgment.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By:    /s/ *Elizabeth Hardy*
Elizabeth Hardy (P37426)
Sonja Lengnick (P67101)
David Porter (P76785)
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
(248) 645-1385 (fax)
ehardy@khvpf.com
slengnick@khvpf.com
dporter@khvpf.com

Dated: July 6, 2023

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2</u>

I hereby certify that this Brief in Support of Defendant's Motion for Summary Judgment contains 2,079 countable words. *See* W.D. Mich. LR 7.2(b)(i). Microsoft Word (Version 2305) was used to calculate the word count.

By:*/s/ Elizabeth Hardy*
Elizabeth Hardy (P37426)
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
ehardy@khvpf.com

9

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

/s/ Elizabeth Hardy
Kienbaum Hardy
 Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@khvpf.com
(P37426)

488544

10